# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
MICHAEL AKOSILE,                        )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )        Civil Action No. 12-307 (RBW)
                                        )
ARMED FORCES RETIREMENT                 )
HOME,                                   )
                                        )
                    Defendant.          )
_____)

## MEMORANDUM OPINION

Plaintiff Michael Akosile, proceeding pro se, brings this action against his former

employer, the Armed Forces Retirement Home ("Retirement Home" or "defendant"), alleging

that he: "was removed from the Federal Service on June 18, 2008 . . . based on false charges,"

Plaintiff's [] Amendment to the Complaint [] ("Am. Compl."), ECF No. 26, at 2; "was suspended

for three days from [March 11, 2008 to March 13, 2008] . . . [with] [n]o evidence of wrong

doing," id. at 3; was the subject of "sex discrimination," id. at 3–5; "received various retaliation

[in response] to his former [Equal Employment Opportunity ("EEO")] complaint," id. at 5; and

was the subject of harassment, id.[1]  Currently before the Court is the defendant's motion for

summary judgment on all of the plaintiff's claims.  Defendant's Motion for Summary Judgment

("Def.'s Mot.").  Upon careful consideration of the motion and the parties' memoranda of law

---

[1] The plaintiff's amended complaint numbers some paragraphs but not others.  See generally Am. Compl.
Therefore, for ease of reference, the Court will cite to the amended complaint by page numbers.

submitted in support of and opposition[2] to the motion, the Court concludes that it must grant summary judgment for the defendant.[3]

## I. BACKGROUND

The following facts are undisputed.[4]  The federal defendant "is an independent and assisted living facility for retired military veterans," Def.'s Facts ¶ 2, with several of its facilities located in the District of Columbia, id. ¶ 8.  The plaintiff is a Nigerian-American male, id. ¶ 3, who was employed by the defendant as a Licensed Practical Nurse ("LPN") from

---

[2] After filing his opposition and statement of material facts, the plaintiff submitted a filing entitled Motion for Correction to the Typographical Error, and Resubmission of Statement of Material Facts and the Missing Exhibits, ECF No. 51, as well as a filing entitled Motion for Resubmission of Plaintiff's Missing Exhibit and the Missing Page of the Plaintiff's Opposition to the Defendant's Motion for Summary Judgment, ECF No. 53, explaining that he inadvertently omitted certain exhibits and information from his opposition, and requesting that the Court consider these documents in its analysis of the defendant's motion for summary judgment.  The defendant opposes neither motion, except with respect to one particular document that was not included in the materials that the plaintiff delivered to defense counsel before the deadline to do so.  Response to Plaintiff's Motion for Correction to the Typographical Error and Resubmission of Statement of Material Facts and the Missing Exhibits, ECF No. 52 at 1. While it opposes consideration of the new material as untimely, the defendant acknowledges that it will not be prejudiced if the Court were to grant the plaintiff's motion because the additional material "does not impact the legal analysis presented by [the] [d]efendant in connection with its motion for summary judgment."  Id.  Mindful of the Court's obligation to "construe pro se filings liberally," Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999) (citations omitted), and in light of the defendant's admission that it will not be prejudiced by the Court's consideration of the plaintiff's resubmissions, the Court will grant these two motions and "read[] all of the plaintiff's filings together," id.

[3] In addition to the documents previously referenced, the Court considered the following submissions in reaching its decision: (1) the defendant's Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem."); (2) the defendant's Statement of Material Facts as to Which There is No Genuine Disputes ("Def.'s Facts"); (3) the Plaintiff's Motion for Opposition to the Defendant's Motion for Summary Judgment ("Pl.'s Opp'n"); (4) the Defendant's Reply in Support of Motion for Summary Judgment ("Def.'s Reply"); (5) the Plaintiff's Statement of Material Facts and Exhibits that Prove that His Removal from the Federal Service Were Based on False Charges; (6) the Defendant's Supplemental Reply in Support of Motion for Summary Judgment; (7) the Plaintiff's Motion for Correction to the Typographical Error, and Resubmission of Statement of Material Facts and the Missing Exhibits ("Pl.'s Am. Facts"); (8) the Plaintiff's Motion for Resubmission of Plaintiff's Missing Exhibit and the Missing Page of the Plaintiff's Opposition to the Defendant's Motion for Summary Judgment; and (9) the Plaintiff's Motion for Opposition to the Defendant's Motion for Summary Judgment ("Pl.'s Supp. Opp'n").

[4] The facts referenced hereafter are taken from the defendant's Statement of Material Facts as to Which There Is No Genuine Dispute unless noted otherwise.  Federal Rule of Civil Procedure 56 and this Court's local rules permit the Court to consider a fact as undisputed if the non-movant fails to address it.  See Fed. R. Civ. P. 56(e)(2); Local Civ. R. 7(h). And, in accordance with Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1992), the Court issued an Order on January 17, 2014, advising the plaintiff that "any factual assertion in the movant's affidavits will be accepted by [this Court] as being true unless the plaintiff submits his own affidavits or other documentary evidence contradicting the assertion."  Jan. 17, 2014 Order, ECF No. 44 at 1.

September 24, 2001, to June 18, 2008, id. ¶ 2.  Elizabeth Weathington, the defendant's Director

of Nursing, id. ¶ 6, personally interviewed and hired the plaintiff, id. ¶ 15.

In late summer or early fall 2006, the plaintiff was transferred to a position in the

defendant's Long Term Care Unit, designated "L4."  See id. ¶ 16.  The L4 unit "is referred to as

the 'skilled unit' because the serious conditions of the patients on that unit impose greater

responsibility on the nurses who care for them."  Id. ¶¶ 10–11.  It "houses approximately 50 of

the sickest patients who live at the [Retirement Home], including many who have tracheotomies

and breathing tubes, complicated, chronic diseases such as congestive heart failure and chronic

obstructive pulmonary disease ("COPD"), and/or who are otherwise in very serious condition."

Id. ¶ 10.

### A.  The Plaintiff's March 2008 Suspension

"On December 19, 2007, Ms. Weathington proposed that [the] [p]laintiff be suspended

for three [calendar] days."  Id. ¶ 42.  The proposal was based on the following allegations: (1)

"Negligence in the Performance of Your Duties"; (2) "Failure to Follow Supervisory Instructions

Resulting in a Charge of Absence Without Leave (AWOL)"; and (3) "Absent Without Leave

(AWOL)."  Def.'s Mot., Exhibit ("Ex.") Y (Proposal for Suspension ("Suspension Proposal")) at

1–2.

The first allegation concerned two transgressions, one being the plaintiff's failure "to

document and administer Morphine Sulphate to" a patient.  Id. at 1.  As the defendant elaborates

in its Statement of Material Facts, on October 12, 2007, the plaintiff "was responsible for

admitting a hospice patient to L4 who had prostate cancer, bone metastasis, who had received

prostate surgery, radiation[,] and chemotherapy."  Def.'s Facts ¶ 44.  The patient arrived at

"about noon," id., from another unit with an order "that he be given morphine to alleviate his

pain every four hours," with his last dose having been administered around 11:45 a.m. earlier

that day, id. ¶ 47.  Upon arrival, the patient "verbalized" that he was in pain, id. ¶ 45, however,

the plaintiff "did not give morphine to the hospice patient for his pain at any time on October 12,

2007, did not do anything to check on the hospice patient after 3:30 [p.m.], and did not sign and

transcribe the morphine order for the hospice patient until 8:00 [p.m.]," id. ¶ 50.  Furthermore, as

the admitting nurse, the plaintiff was responsible for preparing a pain assessment for the patient,

but he failed

> to mark the human diagram to indicate where the hospice patient was experiencing
> pain; to sign and date the assessment; and to completely fill in the following
> information: the frequency of the pain that the hospice patient was experiencing;
> the pain that the hospice patient experienced at various intervals and stages;
> circumstances or activities that increased the hospice patient's pain; times in the
> day when the hospice patient's pain was worse; the hospice patient's current pain
> medication; the strength and frequency of that pain medication; any side effects that
> the hospice patient experienced with his pain medication; whether or not the
> hospice patient had any changes in his pain medication in the last 30 days; and
> whether or not the hospice patient's current pain medication was effective.

Id. ¶ 54.  Finally, in the portion of the patient's chart that is reviewed by the nurse on the

following shift to determine the status of the patient, the plaintiff "did not write that the hospice

patient had been ordered morphine to alleviate his pain or that the hospice patient had verbalized

pain when [the] [p]laintiff assessed him; instead [the] [p]laintiff wrote . . . that the patient had

experienced 'no distress of any kind.'"  Id. ¶ 56.

The second transgression underlying the first allegation cited in support of the charge of

negligence in the performance of the plaintiff's duties concerned his "fail[ure] to transcribe a

Doctor's order for wound treatment to the Medication Administration Record (["]MAR["]) for a

[patient] thereby causing a delay in the medical treatment for this [patient]."  Def.'s Mot., Ex. Y

(Suspension Proposal) at 1.  Specifically, the defendant contends that on October 25, 2007, the

plaintiff was responsible for transcribing a patient's order for Duoderm—a wound treatment

medication—to that patient's October and November 2007 MAR.  Def.'s Facts ¶ 59.  According

to the defendant, this was not done and "the patient did not receive Duoderm treatments during

the first week in November and her wound condition worsened."  Id. ¶ 62.

The suspension proposal noted that the plaintiff's job responsibilities included, among

others: "[c]arrying out patient care independently and in compliance with existing guidelines";

"[m]edication administration and hands on nursing care"; and "[i]dentifying patient problems

and providing input to the care plan."  Def.'s Mot., Ex. Y (Suspension Proposal) at 2.  Thus, the

proposal concluded that the plaintiff was "clearly negligent in [his] duties," and that his "failure

to perform the duties of a LPN [was] both irresponsible and unacceptable."  Id. at 1.

The remaining two allegations arose from the plaintiff's absence from work on two days

in November 2007.  Specifically, on November 6, 2007, the plaintiff called his office to request

sick leave for November 7, 2007.  Def.'s Facts ¶ 63.  He spoke with Evelyn Dizon, a supervisory

nurse, who instructed the plaintiff to seek approval from Ms. Weathington or Aleece Henderson,

the Assistant Director of Nursing.  Id. ¶¶ 7, 63.  The plaintiff did not receive approval from either

Ms. Weathington or Ms. Henderson, and failed to appear for his scheduled shifts on November 7

and 8, 2007.  Id. ¶ 64.  Accordingly, the plaintiff was charged with being absent without leave on

both days.  Def.'s Mot., Ex. Y (Suspension Proposal) at 2.

After considering the suspension proposal and the plaintiff's response, Dr. Linda Rader,

the defendant's Director of Health Care Services and Ms. Weathington's direct supervisor,

Def.'s Facts ¶¶ 5–6, suspended the plaintiff on March 4, 2008, for three calendar days, id. ¶ 43.

The suspension began on March 11, 2008, and concluded on March 13, 2008.  Def.'s Mot., Ex. Z

(Decision on Proposal to Suspend).

**B.  The Plaintiff's Removal**

On March 21, 2008, Ms. Weathington proposed the plaintiff's removal from federal service based upon a charge of "Inattention to Duty."  Def.'s Mot., Ex. OO (Proposal to Remove from Federal Service ("Removal Proposal")) at 1.  The charge was based upon two allegations, both pertaining to the plaintiff's administration of a Physician Order Form prescribing the medication Simethicone to a patient for the treatment of intestinal gas.  See id. at 1–2. According to the defendant, on December 1, 2007, the plaintiff transcribed medical directives ordered for a patient under the plaintiff's care and signed a Physician's Order Form for that patient to receive Simethicone.  Id.  The physician ordered that the medication be administered four times daily, but the plaintiff "failed to transcribe the frequency of the dosage," which resulted in the patient receiving the medication only once daily.  Id.  The plaintiff signed the Physician Order Form as the "reviewing" nurse, meaning that he "had reviewed the doctor's orders and that [he] had made sure that the orders written on the [Physician Order Form] and MAR were what the doctor had ordered for the patient."  Def.'s Facts ¶ 65.  According to the proposal for removal, this violated the defendant's NeighborCare Policy, which "states that [an employee] must transcribe the physician's order to include all components, recording exactly as the physician indicates."  Def.'s Mot., Ex. OO (Removal Proposal) at 1–2.

On December 5, 2007, the plaintiff signed the Physician Order Form for the patient's receipt of Simethicone as the "noting" nurse, "to verify that he had correctly reviewed the Simethicone patient's medication records to make sure that they were what the doctor had ordered when [the] [p]laintiff had first reviewed the patient's records on December 1, 2007." Def.'s Facts ¶ 66.  This violated the defendant's NeighborCare Policy, which states:

> At all relevant times, it was the policy at the [Retirement Home] (and in the nursing industry) for one nurse to review medication records to make sure that they were

the same as the doctor's orders and for a different nurse to later verify (i.e. audit) the review conducted by the first nurse in order to catch and prevent any errors that could endanger a patient.  [The] [p]laintiff did not follow that policy, since he both reviewed (signed) and then verified his earlier review of the . . . patient's records (countersigned), rather than having a different nurse verify his first review of those records.  When the same nurse both reviews and then verifies his earlier review of medication records (i.e. countersigns), there is a greater likelihood that an error in the records will not be picked up, and the safety risk to the patient is increased.

Id. ¶ 70–71.  Thus, the proposal for removal concluded that the plaintiff violated the defendant's NeighborCare Policy because he "signed in the nurse's review section and countersigned the Physician's Order Form in the nurses noted section."   Def.'s Mot., Ex. OO (Removal Proposal) at 2.

The proposal for removal noted that this was the "third act of misconduct" on the part of the plaintiff, and therefore removal was "consistent" with the defendant's Tables of Offenses and Penalties.  Id.  On June 10, 2008, after reviewing the proposal and the plaintiff's response, Dr. Rader issued a decision removing the plaintiff from his position with the defendant.  Def.'s Mot., Ex. PP (June 10, 2008 Decision on Proposal to Remove) at 2.

### C.  The Plaintiff's Administrative Appeal

Following his removal, the plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), "alleging that his removal and the earlier suspension in March 2008 were the result of unlawful discrimination."  Def.'s Facts ¶ 80.  The EEOC dismissed the claim for lack of jurisdiction and referred the matter to the Merit Systems Protection Board ("MSPB").  Id. ¶ 81.  An MSPB administrative law judge held a hearing on March 9, 2011, id. ¶ 82, at which "eight witnesses provided live testimony, including [the] [p]laintiff, [the] [p]laintiff's first and second-level supervisors, a doctor[,] and several nurses who worked with [the] [p]laintiff," id. ¶ 83.  Following the hearing, the administrative law judge issued a decision affirming the defendant's decision to remove the plaintiff from federal service,

id. ¶ 94, concluding that removal "was a reasonable penalty," according to the factors set forth in Douglas v. Veterans Administration, 5 M.S.P.B. 313, 5 M.S.P.R. 280 (April 19, 1981), Def.'s Facts ¶ 96.  Moreover, the administrative law judge "found that the [defendant] had not retaliated against [the] [p]laintiff for protected activity, nor had the [defendant] discriminated against [the] [p]laintiff on the basis of sex or national origin."  Id. ¶ 101.

The plaintiff then filed a petition with the MSPB for reconsideration of the administrative law judge's findings, and a three-member panel denied the petition for review.  Def.'s Mot., Ex. ZZ (MSPB Final Order) at 5.  The panel concluded that "there [was] no new, previously unavailable, evidence and that the administrative [law] judge made no error in law or regulation that affects the outcome" of that ruling.  Id. (citing 5 C.F.R. § 1201.115(d)).  The panel considered the plaintiff's challenges to the administrative law judge's credibility determinations and evidentiary rulings during the administrative proceedings, but determined that the plaintiff had failed to "provide[] an adequate basis for [the panel] to hold that the administrative [law] judge erred."  Id. at 2.  The panel also considered the plaintiff's contention "that he was 'singled out' for both signing and countersigning the Physician's Order Sheet . . . while female nurses in his unit were not disciplined for the same conduct," but concluded that the plaintiff had "not shown that he was similarly situated to these other individuals" and therefore had failed to demonstrate disparate treatment.  Id. at 3.  Lastly, the panel concluded that the administrative law judge's consideration of the plaintiff's "suspension was not clearly erroneous" because: (1) the suspension "was a matter of record, [(2)] [the plaintiff] was informed of the action in writing, and [(3)] he was notified of the means by which he could file a grievance or complaint if he so chose."  Id. at 4.  Thus, the panel "discern[ed] no error in the agency's consideration of this prior discipline to determine a reasonable penalty, or in the administrative law judge's refusal to

relitigate the agency's justification for implementing the suspension." Id.  In sum, the panel

found no reason to disturb the administrative law judge's decision.  See id. at 5.

### D.  The Plaintiff's Prior Related Litigation

This is not the first instance of litigation in this Court between the parties regarding the

plaintiff's former employment with the defendant.  See Akosile v. Armed Forces Ret. Home, 938

F. Supp. 2d 76, 79 (D.D.C. 2013).  In that earlier civil action, the plaintiff alleged the defendant

was liable for "libel, harassment, discrimination based on sex in violation of Title VII of the

Civil Rights Act, and a Title VII retaliation claim resulting from [a] discrimination complaint he

brought in 2005."  Id. at 83.  The Court observed in that case that:

> [i]n the plaintiff's view, the conduct comprising [the alleged] harassment [was]
> [Clinical Supervisory Nurse Shirley] Washington's February 16, 2007 "false
> accusation" that he failed to administer medication to a patient; her conversation
> with him about his lateness and her decision to send him home on March 25, 2007;
> and his allegation that he was charged as [Absent Without Leave] while on
> administrative leave and later while on sick leave.  The plaintiff contends that he
> "was subjected to a daily hostile working environment as [his] immediate
> supervisor was so intoxicated with abus[e] of power that [she] subjected the
> plaintiff into [sic] a daily panic and fear on the job."

Id. at 85 (citations omitted).  The plaintiff also alleged a number of discrete adverse employment

actions taken against him, which he argued constituted discrete acts of sex discrimination under

Title VII, including:

> (1) [Director of Nursing Elizabeth] Weathington's placement of the plaintiff on
> administrative leave on March 26, 2007, based solely on Washington's account of
> [an] incident between her and the plaintiff; (2) his failure to be paid when he was
> placed on administrative leave from March 27-29, 2007; (3) the failure to provide
> him with two weeks' notice of his transfer from the evening to the day shift; and
> (4) the defendant's denial of his request to transfer to another unit.

Id. at 89 (citations omitted).  Lastly, the plaintiff alleged that he "suffered '[v]arious retaliations

due to a former EEO complaint.'"  Id. at 93 (citations omitted).  For the reasons set forth in a

Memorandum Opinion issued in that case, the Court ultimately granted the defendant's motion

for summary judgment with respect to all of the plaintiff's claims.  <u>Akosile I</u>, 938 F. Supp. 2d at
93.

 While that earlier litigation was pending, the plaintiff initiated this second action.  On
March 17, 2015, the Court issued an Order for the plaintiff to show cause "why the doctrine of
<u>res judicata</u> does not bar this second action in its entirety," obviating the need to address the
defendant's summary judgment motion, in light of the fact that the "plaintiff filed the Complaint
in his prior litigation on December 31, 2008—more than six months after the defendant
terminated his employment."  Mar. 17, 2015 Order, ECF No. 56 at 3.  The Court noted that "if
the plaintiff could have included, but did not include, certain facts in his initial lawsuit, he may
not bring a second action stemming from those facts."  <u>Id.</u> (citing <u>Alford v. Providence Hosp.</u>, 60
F. Supp. 3d 118, 125 (D.D.C. 2014)).  The parties briefed the matter, with both concluding that
at least some of the claims in this matter are not duplicative of the plaintiff's claims in the first
case.  Plaintiff's Response to the Court Order to Show Cause Why the Doctrine of Res Judicata
Does Not Bar this Second Action in its Entirety, ECF No. 59 at 2; Defendant's Response
Regarding the Order to Show Cause, ECF No. 65 at 1 (noting that <u>res judicata</u> precludes only
one of the defendant's purported claims of sex discrimination).  Satisfied with the parties'
responses, the Court will proceed with its consideration of the defendant's motion for summary
judgment.

## II.  STANDARD OF REVIEW

 Before granting a motion for summary judgment pursuant to Federal Rule of Civil
Procedure 56, a court must find that "there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is material if it
might affect the outcome of the suit under the governing law, and a dispute about a material fact

is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Steele v. Schafer, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (internal quotation marks omitted).

When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." Id. The movant has the burden of demonstrating the absence of a genuine issue of material fact and that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In responding to a summary judgment motion, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Accordingly, the non-moving party must not rely on "mere allegations or denials . . . but . . . must set forth specific facts showing that there [are] genuine issue[s] for trial." Anderson, 477 U.S. at 248 (second omission in original) (citation and internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position [is] insufficient" to withstand a motion for summary judgment, but rather "there must be [some] evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

Finally, although filings by a pro se litigant "must be held to less stringent standards than [those] drafted by lawyers," see Atherton v. Dist. of Columbia Office of Mayor, 567 F.3d 672,

681–82 (D.C. Cir. 2009), this latitude "does not constitute a license for a plaintiff filing pro se to

ignore the Federal Rules of Civil Procedure," Moore v. Agency for Int'l Dev., 994 F.2d 874, 876

(D.C. Cir. 1993).  Thus, while a court has an obligation to construe a pro se plaintiff's filings

liberally, Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999), a pro se litigant

"cannot generally be permitted to shift the burden of litigating his case to the courts, nor to avoid

the risks of failure that attend his decision to forego expert assistance," Dozier v. Ford Motor

Co., 702 F.2d 1189, 1194 (D.C. Cir. 1983) (Scalia, J.).

### III. ANALYSIS

The plaintiff's amended complaint is an appeal from a MSPB decision that constitutes a

"mixed case"—a type of case that involves "an adverse personnel action subject to appeal to the

MSPB coupled with a claim that the action was motivated by discrimination," and is guided by

the procedures set forth in 5 U.S.C. § 7702.  Butler v. West, 164 F.3d 634, 638 (D.C. Cir. 1999).

"Although [MSPB] decisions are generally reviewed by the Court of Appeals for the Federal

Circuit, 'mixed cases' that involve both MSPB appeals and discrimination claims under Title VII

of the Civil Rights Act of 1964 ('Title VII'), as amended, 42 U.S.C. § 2000e [to e–17 (2012)],

are reviewed in federal district court."  Vickers v. Powell, 493 F.3d 186, 192 (D.C. Cir. 2007);

see also Hayes v. U.S. Gov't Printing Office, 684 F.2d 137, 140 (D.C. Cir. 1982)

("[D]eterminations by the MSPB in mixed cases of discrimination and nondiscrimination must

be reviewed initially by the district court.").

"In mixed cases that present both adverse personnel actions and discrimination claims,

courts treat the claims as a single unit, but apply different standards of review."  White v.

Tapella, 876 F. Supp. 2d 58, 64 (D.D.C. 2012) (citing Hayes, 684 F.2d at 139).  As this Circuit

has explained:

On the <u>discrimination</u> claim, the complainant "shall have the right to have the facts subject to trial <u>de novo</u> by the reviewing court." The district court reviews <u>nondiscrimination</u> claims on the administrative record, and will set aside the MSPB's determinations only when "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; "obtained without procedures required by law, rule or regulation having been followed"; or "unsupported by substantial evidence."

<u>Butler</u>, 164 F.3d at 639 n.10 (quoting 5 U.S.C. § 7703(c)) (emphasis added); <u>see also</u> <u>Robinson v. Duncan</u>, 775 F. Supp. 2d 143, 157 (D.D.C. 2011) ("The district court reviews the discrimination and retaliation claims <u>de novo</u> and reviews the nondiscrimination claims on the administrative record.").

**A. The Plaintiff's Allegations of Discrimination Under Title VII**

  **1. Discrete Allegations of Sex Discrimination**

"Title VII prohibits the federal government from discriminating in employment on grounds of race or sex, and from retaliating against employees for engaging in activity protected by Title VII." <u>Montgomery v. Chao</u>, 546 F.3d 703, 706 (D.C. Cir. 2008) (internal citations omitted). In the absence of direct evidence of discrimination, as is the situation here, claims of employment discrimination under Title VII are analyzed under the three-part framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>Jackson v. Gonzales</u>, 496 F.3d 703, 706 (D.C. Cir. 2007) (internal citation omitted). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination, by providing proof of "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." <u>Swierkeiewicz v. Sorema N.A.</u>, 534 U.S. 506, 510 (2002) (internal citations omitted). If the plaintiff establishes a prima facie case, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." <u>McDonnell Douglas</u>, 411 U.S. at 802. Once the employer offers a legitimate, nondiscriminatory justification

for its action, "the <u>McDonnell Douglas</u> framework—with its presumptions and burdens—disappears, and the sole remaining issue is discrimination <u>vel</u> <u>non</u>."  <u>Jackson</u>, 496 F.3d at 707 (internal citation and quotation marks omitted).  After the employer makes such a showing, "the plaintiff must prove that a reasonable jury could infer that the employer's given explanation was pretextual and that this pretext shielded discriminatory motives."  <u>Id.</u> (internal citations omitted).

Notwithstanding the foregoing, if the defendant "has asserted a legitimate, non-discriminatory reason" for the adverse employment action in a motion for summary judgment, "the district court need not—<u>and should not</u>—decide whether the plaintiff actually made out a prima facie case under <u>McDonnell Douglas</u>."  <u>Brady v. Office of the Sergeant at Arms</u>, 520 F.3d 490, 494 (D.C. Cir. 2008).  Rather, the Court should evaluate only whether "the employee [has] produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race," <u>Evans v. Sebelius</u>, 716 F.3d 617, 620 (D.C. Cir. 2013) (citation omitted), or as here on the basis of gender, <u>Talavera v. Shah</u>, 638 F.3d 303, 308 (D.C. Cir. 2011).  Typically, plaintiffs rely on one of two types of evidence to establish pretext: (1) "the employee may attempt to demonstrate that the employer is making up or lying about the underlying facts that formed the predicate for the employment decision," or (2) "the employee attempts to produce evidence suggesting that the employer treated other employees of a different race, color, religion, sex, or national origin more favorably in the same factual circumstances."  <u>Brady</u>, 520 F.3d at 495 (internal citations omitted); <u>see also</u> <u>Wheeler v. Georgetown Univ. Hosp.</u>, 52 F. Supp. 3d 40, 47 (D.D.C. 2014) ("Plaintiffs typically take one of two approaches in attempting to undermine an employer's stated reason for their termination." (internal citations omitted)).  If the plaintiff fails to present such evidence, summary judgment must be granted for

the employer.  Paquin v. Fed. Nat'l Mortg. Ass'n, 119 F.3d 23, 27–28 (D.C. Cir. 1997).  And

conclusory allegations of discriminatory animus lacking any factual basis in the record are

insufficient to defeat summary judgment.  See Hussain v. Nicholson, 435 F.3d 359, 365 (D.C.

Cir. 2006) (concluding that the district court properly disregarded the plaintiff's "evidence of

religious animus" because it "consisted merely of conclusory allegations in his own affidavit"

(internal citation omitted)).

### i.  The Plaintiff's March 2008 Suspension

The first instance of alleged discrimination pertains to the plaintiff's March 2008

suspension.  See Am. Compl. at 3–4 (describing the circumstances that formed the predicate for

the plaintiff's suspension as alleged sex discrimination).  The defendant maintains that it

suspended the plaintiff "because he (i) neglected a hospice patient who did not receive morphine

for pain; (ii) failed to transcribe a doctor's order for a patient's wound treatment and the wound

worsened; (iii) failed to follow supervisory instructions [regarding leave procedures]; and (iv)

was absent without leave."  Def.'s Mem. at 27.

Based upon the factual circumstances regarding each of these charges, the Court

concludes that the defendant has stated legitimate non-discriminatory reasons for the suspension.

With respect to the plaintiff's alleged failure to administer morphine to a hospice patient in pain

and his alleged failure to transcribe a patient's order for wound treatment, the defendant

maintains that this constituted a "failure to perform the duties of a LPN," which includes

"[c]arrying out patient care independently and in compliance with existing guidelines";

"[m]edication administration and hands on nursing care"; and "[i]dentifying patient problems

and providing input to the care plan."  Def.'s Mot., Ex. Y (Suspension Proposal) at 1–2.  And as

is the case here, an employer states a legitimate non-discriminatory reason for an adverse

employment action where "the plaintiff understood the duties and responsibilities of the position

. . . and simply failed to perform them in a satisfactory manner." Royall v. Nat'l Ass'n of Letter

Carriers, AFL-CIO, 507 F. Supp. 2d 93, 106 (D.D.C. 2007) (Walton, J.) aff'd, 548 F.3d 137

(D.C. Cir. 2008); see also Drewrey v. Clinton, 763 F. Supp. 2d 54, 63 (D.D.C. 2011) ("An

employee's insubordination and his failure to perform his duties are legitimate,

nondiscriminatory reasons for adverse employment actions." (citing Smith v. District of

Columbia, 430 F.3d 450, 455 (D.C.Cir.2005))) aff'd, 466 F. App'x 9 (D.C. Cir. 2012); Hussain

v. Gutierrez, 593 F. Supp. 2d 1, 9 (D.D.C. 2008) (failure "to perform routine duties in a timely

fashion" constitutes "a legitimate, non-discriminatory reason for terminating" an employee).

Moreover, with respect to the plaintiff's purported failure to follow leave procedures and

placement on AWOL status, other members of this Court have consistently held that an

employee's "fail[ure] to meet the attendance and punctuality requirements of [the] job"

constitutes a legitimate, nondiscriminatory reason for termination. Williams v. Verizon Wash.,

D.C., Inc., 266 F. Supp. 2d 107, 112 (D.D.C. 2003); see also Clarke v. Wash. Metro. Area

Transit Auth., 904 F. Supp. 2d 11, 16 (D.D.C. 2012) (employee's persistent tardiness is a

legitimate, nondiscriminatory reason for termination).

 These legitimate, non-discriminatory reasons are bolstered by the fact that the official

who proposed the plaintiff's suspension—Ms. Weathington—was the same official who initially

interviewed and hired the plaintiff. See Def.'s Mem. at 24. As this Circuit has explained, a

plaintiff "faces a significant initial hurdle" when the official who proposes the disciplinary action

is the same person who hired the plaintiff, because "it is difficult to impute to [that person] an

invidious motivation that would be inconsistent with the decision to hire." Vatel v. Alliance of

Auto. Mfrs., 627 F.3d 1245, 1247 (D.C. Cir. 2011) (quoting Waterhouse v. District of Columbia, 298 F.3d 989, 996 (D.C. Cir. 2002)).

Having concluded that the defendant set forth legitimate, non-discriminatory reasons for suspending the plaintiff, the Court turns to the question of whether the plaintiff has produced enough evidence to establish that these reasons are mere pretext for discrimination.  See Brady, 520 F.3d at 494.  But neither the Amended Complaint, nor any of the plaintiff's filings in opposition to the defendant's motion for summary judgment articulate a reason to find pretext, other than conclusory statements that the allegations constitute "false charge[s]."  See Am. Compl. at 3–4.  And the plaintiff's mere conclusory assertions are insufficient to satisfy his burden.  See, e.g., Hussain, 435 F.3d 359, 365 (D.C. Cir. 2006).  The Court must therefore grant the defendant's motion for summary judgment on the plaintiff's claim regarding his 2008 suspension.  Johnson v. Vilsack, 815 F. Supp. 2d 221, 232 (D.D.C. 2011) ("These assertions do not suffice to rebut defendant's legitimate, non-discriminatory explanation, not only because they are unsupported by the evidence, but also because they fail to assert that any action was taken based on plaintiff's [protected class].").

### ii.  The Plaintiff's Removal

The second instance of alleged discrimination pertains to the plaintiff's removal from his position.  Am. Compl. at 4–5 (describing the circumstances which formed the predicate of the plaintiff's removal as alleged sex discrimination).  The defendant maintains that it removed the plaintiff "because he failed to properly review and transcribe a physician's order, causing the patient to be harmed when he received less medication than had been ordered for a month, and for improperly signing and countersigning the physician's order form for that patient."  Def.'s Mem. at 30.

The plaintiff's failure to transcribe this medication order is a legitimate, non-discriminatory reason for the defendant's decision to remove him.  As previously explained, an employer states a legitimate, non-discriminatory reason for an adverse employment action where "the plaintiff understood the duties and responsibilities of the position . . . and simply failed to perform them in a satisfactory manner."  Royall, 507 F. Supp. 2d at 106.  Moreover, the defendant explained in its proposal to remove the plaintiff that signing and countersigning a Physician's Order Form was a direct violation of the defendant's NeighborCare Policy.  Def.'s Mot., Ex. OO (Removal Proposal) at 2; see also Def.'s Facts ¶ 70 ("At all relevant times, it was the policy at the [defendant] . . . for one nurse to review medication records to make sure that they were the same as the doctor's orders and for a different nurse to later verify (i.e. audit) the review conducted by the first nurse in order to catch and prevent any errors that could endanger a patient.").  And other members of this Court have held that an employee's failure to abide by an employer's policies and procedures constitutes a legitimate, non-discriminatory reason for termination.  See, e.g., Akonji v. Unity Healthcare, Inc., 517 F. Supp. 2d 83, 95 (D.D.C. 2007) ("Insubordination and violation of company rules are widely accepted non-discriminatory reasons for termination.").

The defendant having stated legitimate, non-discriminatory reasons for the plaintiff's removal, the Court next considers whether the plaintiff offers sufficient evidence of pretext.  As with his suspension, the plaintiff again "faces a significant initial hurdle" because it was the same official who both hired the plaintiff and proposed his termination.  Vatel, 627 F.3d at 1247.  The plaintiff's sole claim of pretext as to his removal is that "[a]ll the female nurses signed and countersigned the same physician order form" and that he "was singled out for wrong doing [sic] and was removed from the Federal Service."  Am. Compl. at 4–5.  While it is true that pretext

may be established by "produc[ing] evidence suggesting that the employer treated other employees of a different . . . sex . . . more favorably in the same factual circumstances," Brady, 520 F.3d at 495, evidence of disparate treatment requires the plaintiff to demonstrate that he was "similarly situated" to the comparator, such that "all of the relevant aspects" of plaintiff's employment situation were "nearly identical." Neuren v. Adduci, Mastriani, Meeks & Schill, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (citation omitted); see also Dudley v. WMATA, 924 F. Supp. 2d 141, 162 (D.D.C. 2013) ("When relying on a comparator to overcome the employer's proffered legitimate explanation, there must be a very close relationship between the compared employees.").

Here, the plaintiff fails to describe with particularity an instance in which a similarly situated female signed and countersigned a Physician's Order Form that resulted in disparate treatment. While the plaintiff does offer purported evidence that female nurses signed and countersigned doctor's orders on several occasions, see Pl.'s Facts at 42–45; Pl.'s Facts, Ex. E-4 (Physician's Order Forms) at 1–10, he does not suggest or provide evidence demonstrating that Ms. Weathington or Dr. Rader ever became aware of these other violations. "To be successful in the use of comparator evidence, the plaintiff must point to a similarly situated employee outside of a protected class who committed comparable offenses but who was punished less severely by the same deciding official." Sledge v. District of Columbia, 63 F. Supp. 3d 1, 17–18 (D.D.C. 2014) (emphasis added) (internal quotation marks and citation omitted). Furthermore, the plaintiff offers no evidence regarding his purported comparators' disciplinary histories. This "prevents [the] [p]laintiff from showing that he is similarly situated to [the comparators], because [the] [p]laintiff's [own] disciplinary history with [the] defendant [may be] a relevant factor that distinguishes [him]." Isse v. Am. Univ., 540 F. Supp. 2d 9, 33 (D.D.C. 2008) (internal quotation

marks and citation omitted) (some alterations in original).  Indeed, the plaintiff's removal was

predicated on the fact that this was his "third act of misconduct."  Def.'s Mot., Ex. OO

(Removal Proposal) at 2.  Lastly, the plaintiff offers no evidence or argument to rebut the

defendant's assertion that "no incident of improper signing and countersigning other than the

incident involving the [p]laintiff's Simethicone patient was known to have caused either actual

or potential harm to a patient" or resulted in a complaint to management by a patient.  Def.'s

Facts ¶ 73.  And to be similarly situated, a comparator must be charged with a violation of

"comparable seriousness."  Holbrook v. Reno, 196 F.3d 255, 261 (D.C. Cir. 1999).

Where, as here, a plaintiff fails to identify any similarly-situated comparators, "an

inference of falsity or discrimination is not reasonable."  Montgomery, 546 F.3d at 707 (citation

and internal quotation marks omitted).  The plaintiff having failed to put forth any evidence that

would suggest that the defendant's legitimate, non-discriminatory reasons for his termination

constitute pretext, the Court must grant the defendant's motion for summary judgment with

respect to the claim concerning his dismissal.

### iii.   The Lack of Investigation into the Plaintiff's Complaint about Another Employee

The plaintiff also asserts a claim of sex discrimination against the defendant because

management allegedly failed to investigate or discipline a coworker after an incident reported by

the plaintiff.  Am. Compl. at 5.  Specifically, the plaintiff contends that a nurse on his unit

"neglected a patient [] in [a] pool of blood, after [he] fell in his wheel chair which caused a

serious injury."  Id.  The plaintiff notes that he reported the incident to "Ms. [] Weathington, []

human [r]esources, [and] Mr. Bob Palmer (Bureau of public debt)" but "[n]o investigation was

conducted."  Id.

This purported instance of sex discrimination fails to allege any injury to the plaintiff that could constitute an adverse employment action. "An adverse employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." Douglas v. Donovan, 559 F.3d 549, 552 (D.C. Cir. 2009) (internal citations omitted). "An employee must 'experience[] materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm.'" Id. (quoting Forkkio v. Powell, 306 F.3d 1127, 1131 (D.C. Cir. 2002)). And an agency's "alleged failure to investigate" a complaint submitted by a plaintiff regarding the conduct of another employee "does not make up a tangible, affirmative legally cognizable adverse action." Runkle v. Gonzales, 391 F. Supp. 2d 210, 223 (D.D.C. 2005) (internal quotation marks and citation omitted). The defendant's purported decision not to conduct an investigation into this patient's purported accident has no bearing on the plaintiff's employment status, and therefore, is not an adverse employment action that can form the basis of a discrimination complaint. See id. Therefore, summary judgment on this claim must be granted.[5]

#### iv.   The Defendant's Refusal to Transfer the Plaintiff

Lastly, the plaintiff alleges that he "requested to be transferred from his immediate supervisor," but that this "request was denied by the director of nursing." Am. Compl. at 5. The plaintiff asserts that "a female licensed nurse was granted a transfer," and therefore the denial of

---

[5] Moreover, even if the Court were to conclude that the alleged activity constituted an adverse employment action, the Court would nevertheless grant summary judgment on this claim because the plaintiff has failed to offer any evidence that would "support a causal inference that gender was [the defendant's] motivating factor" in its purported decision not to investigate the plaintiff's claim, or evidence of "gender discrimination based on disparate treatment." Slate v. Pub. Defender Serv. for the District of Columbia, 31 F. Supp. 3d 277, 298 (D.D.C. 2014).

his request constituted sex discrimination.  Id.  These allegations were raised during the parties'

prior litigation and have already been addressed by this Court.  See Akosile, 938 F. Supp. 2d at

91.  In granting summary judgment for the defendant in that case, the Court explained that

> A plaintiff who is made to undertake or who is denied a lateral transfer—that is,
> one in which [he] suffers no diminution in pay or benefits—does not suffer an
> actionable injury unless there are some other materially adverse consequences
> affecting the terms, conditions, or privileges of [his] employment or [his] future
> employment opportunities such that a reasonable trier of fact could conclude that
> the plaintiff has suffered objectively tangible harm.  Mere idiosyncrasies are not
> sufficient to state an injury.

Id. (quoting Stewart v. Ashcroft, 352 F.3d 422, 426 (D.C. Cir. 2003)).  The Court concluded that

"the defendant's denial of the plaintiff's request for a lateral transfer [did] not rise to the level of

an adverse employment action" because "forcing the plaintiff to continue to work under a

supervisor whom he disliked and felt treated him unfairly . . . is the kind of 'purely subjective

injur[y]' that does not 'affect[] the terms, conditions, or privileges of employment or future

employment opportunities.'"  Id. at 92.  Neither the plaintiff's complaint nor his opposition

offers any new information or reasoning to disturb the Court's prior ruling.

     Even if the plaintiff had done so, this claim is precluded under the doctrine of res

judicata.  "Res judicata plays a central role in advancing the 'purpose for which civil courts have

been established, the conclusive resolution of disputes within their jurisdictions.'"  Apotex, Inc.

v. FDA, 393 F.3d 210, 217 (D.C. Cir. 2004) (quoting Montana v. United States, 440 U.S. 147,

153 (1979)).  The doctrine "preclud[es] parties from contesting matters that they have had a full

and fair opportunity to litigate," "protect[s] against 'the expense and vexation attending multiple

lawsuits, conserv[es] judicial resources, and foste[rs] reliance on judicial action by minimizing

the possibility of inconsistent decisions.'"  Taylor v. Sturgell, 553 U.S. 880, 892 (2008) (quoting

Montana, 440 U.S. at 153–54).  The doctrine's requirements are plainly met here with respect to

this alleged adverse employment action because there "has been prior litigation (1) involving the

same claims or cause of action, (2) between the same parties or their privies, and (3) there has

been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." Porter v.

Shah, 606 F.3d 809, 813–14 (D.C. Cir. 2010) (internal citations and quotation marks omitted).

Thus, the Court must also grant summary judgment on the plaintiff's refusal to transfer claim.

### 2. Allegations of Retaliation

The plaintiff asserts in his Amended Complaint that the defendant retaliated against him

for engaging in prior EEO activity, Am. Compl. at 5–6, that being an EEO complaint he filed in

July 2007, see Def.'s Mem. at 37.  To support this allegation, the plaintiff alleges that he "was

rated below the work performed" on his performance evaluation for 2007, that his "request[s] for

any type of leave were denied," that his spouse's performance evaluation was "degraded to a

lower rating by the director of nursing without any reason and without any explanation," and that

his spouse's "request to attend the high school graduation of her son was denied without any

reason." Id.

Title VII's anti-retaliation provision "forbids employer actions that discriminate against

an employee (or job applicant) because he has opposed a practice that Title VII forbids . . . ."

Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 59 (2006).  In the absence of direct

evidence of retaliation, "[e]valuation of Title VII retaliation claims follows the same burden-

shifting template as discrimination claims." Holcomb v. Powell, 433 F.3d 889, 901 (D.C. Cir.

2006) (citing Cones v. Shalala, 199 F.3d 512, 520 (D.C. Cir. 2000)); see also Holbrook, 196 F.3d

at 263 (finding that the McDonnell Douglas burden-shifting framework governs claims of

retaliation).  Under this framework, "a plaintiff must [first] establish a prima facie case of

retaliation; if [he] meets that burden, the employer must articulate a legitimate nonretaliatory

reason for its action; finally, the plaintiff has the ultimate burden of establishing that the reason

asserted by the employer is pretext for retaliation." Holcomb, 433 F.3d at 901 (citing Cones, 199

F.3d at 520). In order to establish a prima facie case of retaliation, the plaintiff must demonstrate

that "(1) he engaged in statutorily protected activity [under Title VII]; (2) that he suffered a

materially adverse action by his employer; and (3) that a causal link connects the two." Jones v.

Bernanke, 557 F.3d 670, 677 (D.C. Cir. 2009).[6]

 With respect to the third element, the "plaintiff needs only to establish facts adequate to

permit an inference of retaliatory motive" to survive summary judgment. Powell v. Washington

Metro. Area Transit Auth., 238 F. Supp. 2d 160, 166 (D.D.C. 2002) (citing Mitchell v. Baldrige,

759 F.2d 80, 85 (D.C. Cir. 1985)). But here, the plaintiff fails to satisfy even this lenient

standard because he presents no evidence or suggestion of any connection between his prior EEO

activities and the alleged adverse actions. See generally, Am. Compl.; Pl.'s Opp'n.

 While the Court appreciates that in the absence of direct evidence of a causal connection,

a plaintiff "may raise a presumption of causation by showing that the employer had knowledge

of the protected activity and that the adverse action occurred soon thereafter," Vance v. Chao,

496 F. Supp. 2d 182, 186 (D.D.C. 2007) (citing Mitchell, 759 F.2d at 86), "[t]he cases that accept

mere temporal proximity between an employer's knowledge of protected activity and an adverse

---

[6] As the Court previously explained, if the defendant "has asserted a legitimate, non-discriminatory reason" for the adverse employment action in a motion for summary judgment, "the district court need not—and should not— decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas." Brady, 520 F.3d at 494. Rather, the Court should evaluate only whether "the employee [has] produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race," Evans, 716 F.3d at 620 (citation omitted), or as here on the basis of gender, Talavera, 638 F.3d at 308. This is true even with respect to Title VII retaliation claims. See Young v. Covington & Burling LLP, 846 F. Supp. 2d 141, 164–65 (D.D.C. 2012) (Walton, J.) (applying the Circuit's instruction in Brady to a Title VII retaliation claim). But here, the defendant moves for summary judgment on this claim, not by asserting legitimate non-discriminatory reasons for each of the alleged instances of retaliation, but instead by disputing that the plaintiff has established a prima facie case. See Def.s' Mem. at 34–38. Accordingly, the Court will conduct its analysis according to the burden-shifting approach set forth under McDonnell Douglas. Cf. Lewis v. District of Columbia, 653 F. Supp. 2d 64, 76 n.7 (D.D.C. 2009) ("Brady was not intended to force employers to choose between asserting a legitimate, nondiscriminatory justification and attacking the sufficiency of the plaintiff's prima facie case.").

employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close,'" Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (explaining case law holding that a gap of three or four months between the protected activity and the alleged adverse action was "insufficient").  Thus, "Courts of this Circuit have generally accepted time periods of a few days up to a few months," Payne v. Salazar, 899 F. Supp. 2d 42, 58 (D.D.C. 2012), and have found six months to be "the outer edge of acceptable temporal proximity," Dudley, 924 F. Supp. 2d at 179; see also Taylor v. Solis, 571 F.3d 1313, 1322 (D.C. Cir. 2009) ("[A]n inference of retaliatory motive based upon the 'mere proximity' in time" would be "untenable" where the adverse action occurred two and a half months after protected activity).  And as the defendant aptly notes:

> Plaintiff filed his EEO complaint in July 2007.  The five actions about which he complains: (i) performance evaluation in February 2008; (ii) denial of leave (timing unspecified); (iii) his spouse's performance evaluation, presumably in or around February 2008; (iv) his March 2008 suspension; and (v) denial of his spouse's request for leave to attend her son's graduation in June 2008 are not sufficiently close in time to establish a causal connection.

Def.'s Mem. at 37.  The Court agrees and therefore concludes that the plaintiff has failed to establish a prima facie claim of retaliation because "[t]he Court cannot infer retaliation from temporal proximity, and [the plaintiff] has provided no direct evidence of retaliation."  Dudley, 924 F. Supp. 2d at 181.

### 3.  Allegations of Harassment

Finally, the plaintiff makes a claim of harassment, i.e., a hostile work environment, based upon the following three incidents: (1) on January 16, 2008, the plaintiff's supervisor invited a supervisor of another unit "to sit with her in her office while . . . talking to the plaintiff about his performance evaluation for 2007"; (2) on January 31, 2008, a supervisor "disgracefully sent [the] plaintiff home without any reason"; and (3) on March 21, 2008—the day that the defendant

proposed the plaintiff's removal—the plaintiff was escorted "out of the premises to the street like a criminal" by two police officers.  Am. Compl. at 6.

"Title VII makes it unlawful for an employer to subject an employee to a hostile work environment because of the employee's race, color, religion, sex, or national origin."  Asghar v. Paulson, 580 F. Supp. 2d 30, 38 (D.D.C. 2008) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).  To establish a claim of a hostile work environment, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment occurred because of the plaintiff's protected status; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question but nonetheless failed to either take steps to prevent it or afford the plaintiff prompt remedial action.  Baloch v. Norton, 355 F. Supp. 2d 246, 259 (D.D.C. 2005). Title VII does not provide a cause of action for "ordinary tribulations in the workplace," Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998), and to prevail on a hostile work environment claim, a plaintiff must show that his "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," Harris, 510 U.S. at 21 (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65, 67 (1986)).

> In determining whether a hostile work environment claim is substantiated, a court looks at all the circumstances of a plaintiff's employment, specifically focusing on such factors as the frequency of the discriminatory conduct, its severity, whether it was threatening and humiliating or was merely offensive, and whether it unreasonably interfered with the employee's work performance.

Morris v. Jackson, 842 F. Supp. 2d 171, 179–81 (D.D.C. 2012) (citing Harris, 510 U.S. at 23).

The plaintiff's allegations fall far short of meeting this exacting standard.  The conduct supporting a hostile work environment claim "must be extreme," and "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of

employment." George v. Leavitt, 407 F.3d 405, 416 (D.C. Cir. 2005) (quoting Faragher, 524

U.S. 775, 788 (1998)).  As this Court previously explained in the plaintiff's prior suit against the

defendant, "[t]hree isolated incidents over the course of three months can hardly be characterized

as 'pervasive.'" Akosile, 938 F. Supp. 2d at 87.  Moreover, the Court draws parallels to the

allegations of harassment set forth in Hunter v. District of Columbia, 797 F. Supp. 2d 86 (D.D.C.

2011), in which the plaintiff complained that "he was subject to ridicule as he was escorted from

the building by police officers," that he was issued "a poor performance evaluation," that his

employer "made unsubstantiated accusations about plaintiff's customer service," and that he was

otherwise "ridiculed" by the employer's Chief Financial Officer, id. at 93.  In that decision,

Judge Amy Berman Jackson of this Court found these allegations "not pervasive, frequent, or

severe enough to constitute an abusive work environment." Id.

 Even if the Court were to assume that the plaintiff's allegations of harassment were

sufficiently severe or pervasive, his claim still lacks merit because he "fails to allege facts that

would plausibly suggest the necessary connection between the events he finds abusive and his

membership in a protected class." Id. (citations omitted); see also Akosile, 938 F. Supp. 2d at 86

("To the extent that the plaintiff's harassment claim is not premised on his membership in a class

protected under Title VII, the Court must grant summary judgment on the claim under Title VII

because the harassment alleged by the plaintiff was not because of [his] race, color, religion, sex,

or national origin." (citing Harris, 510 U.S. at 21) (other citation and internal quotation marks

omitted)).  Indeed, other members of this Court have found alleged incidents of harassment that

"are not related" to a plaintiff's protected class insufficient to support a hostile work environment

claim. Kelley v. Billington, 370 F. Supp. 2d 151, 158 (D.D.C. 2005) ("Because these five

incidents cannot be construed as involving [the] plaintiffs' race, they cannot support [the]

plaintiffs' hostile work environment claim."); see also Lester v. Natsios, 290 F. Supp. 2d 11, 31–32 (D.D.C. 2003) (finding insufficient two incidents offered in support of a hostile work environment claim that were not shown to have been based on the plaintiff's race).  Without any "suggestion of how he was discriminated against because of his status as opposed to any other, non-discriminatory reason . . . , [t]he Court is left to infer that each act was discriminatory or retaliatory simply based on the fact that he is a man."  Hunter, 797 F. Supp. 2d at 94.  And here, nothing in the plaintiff's amended complaint or his summary judgment opposition offers any basis for the Court to find a connection between the alleged harassment and the plaintiff's protected class.  Thus, the Court must grant summary judgment for the defendant on the plaintiff's harassment (i.e., hostile work environment) claim.

## B.  The Plaintiff's Challenges of his MSPB Decision

The plaintiff's amended complaint also alleges that his removal from federal service in June 2008 was "wrongful" because it was "based on false charges."  Am. Compl. at 2.  Similarly, the plaintiff alleges that his March 2008 suspension was "[w]rongful" because the "charges [that prompted the suspension] were all false."  Id. at 3.  To the extent that the plaintiff challenges the MSPB's findings regarding his non-discrimination claims,[7] the Court must conclude that he has failed to set forth any reason to disturb those findings.

Upon a challenge to a MSPB decision, "this Court will reverse the Board's determination if it concludes that the decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'; if it was 'obtained without procedures required by law, rule, or

---

[7] While the plaintiff's amended complaint does not articulate a particular cause of action that would arise from these allegations, the Court remains mindful of its duty to construe pro se pleadings liberally, see Atherton, 567 F.3d at 681–82, and construes the claims as noted above.

regulation being followed'; or, if it is 'unsupported by substantial evidence.'" Horn v. U.S.

Dep't of Army, 284 F. Supp. 2d 1, 10–11 (D.D.C. 2003) (citing 5 U.S.C. § 7703(c)).

> [I]n assessing whether the MSPB's ruling was supported by substantial evidence, a court is limited to determining "whether the agency . . . could fairly and reasonably find the facts that it did," and "[a]n agency conclusion may be supported by substantial evidence even though a plausible alternative interpretation of the evidence would support a contrary view."

Rountree v. Johanns, 382 F. Supp. 2d 19, 32 (D.D.C. 2005) (quoting Robinson v. NTSB, 28 F.3d

210, 215 (D.C. Cir. 1994)).  Where an administrative law judge's findings are predicated on

credibility assessments, such findings "are 'virtually unreviewable[]' and a plaintiff's de facto

request for the Court to 're-weigh conflicting evidence' is inconsistent with the reviewing court's

function."  Id. (quoting Bieber v. Dep't of the Army, 287 F.3d 1358, 1364 (Fed. Cir. 2002)).

The plaintiff offers no basis for the Court to find error in the MSPB's determinations,

other than conclusory allegations that his suspension and termination were based on "false

charges."  Am. Compl. at 2–3.  As the Court has previously indicated, the administrative law

judge arrived at the decision to affirm the plaintiff's removal after weighing the evidence and

live testimony presented during an administrative hearing.  Def.'s Facts ¶¶ 82–83.  Following

that determination, a three-member panel of the MPSB denied the plaintiff's petition for review,

concluding that "there [was] no new, previously unavailable, evidence and that the

administrative [law] judge made no error in law or regulation that affects the outcome" of that

ruling.  Def.'s Mot., Ex. ZZ (MSPB Final Order) at 5.  It is the plaintiff's "burden [to] establish[]

error in the Board's decision."  Horn, 284 F. Supp. 2d at 11 (quoting Tiburzi v. Dep't of Justice,

269 F.3d 1346, 1351 (Fed. Cir. 2001)).  And summary judgment for an agency is appropriate

where, as here, the "plaintiff utterly fails to rebut [the] defendant's showing that his removal

from federal service was justified . . . or to demonstrate reversible error in the MSPB's decision

affirming plaintiff's removal."  Brown v. Vilsack, 923 F. Supp. 2d 118, 128 (D.D.C. 2013).

**IV. CONCLUSION**

The plaintiff has failed to offer any evidence of sex discrimination that rebuts the defendant's legitimate, non-discriminatory reasons for the adverse employment actions taken against him, has not established a prima facie case of retaliation or harassment under Title VII, and is otherwise precluded by the doctrine of res judicata from raising his remaining claims of discrimination.  Moreover, the plaintiff has failed to offer any reason that warrants disturbing the MSPB's determinations with respect to his non-discrimination claims.  Therefore, the Court concludes that it must grant the defendant's motion for summary judgment.

**SO ORDERED** this 2nd day of November, 2015.


REGGIE B. WALTON
United States District Judge